Thank you, Your Honors. Mark Rosenberg here on behalf of Ralph Taylor and Orion Insurance. I'd like to reserve four minutes, please. Go ahead, insurance. She's just reserved it for you. Thank you. She'll keep track. It goes down, and when you get to four, that means you've got four left. Thank you, Your Honor. So we'll both watch it. Okay. Mr. Taylor is black. This is a fact recognized by the state of Washington itself. In 2014, Washington's Office of Minorities and Women's Business Enterprises certified Mr. Taylor as black and certified Orion as a minority business enterprise. And the feds are supposed to abide by that? Well, it's a fact, though. It's a fact that Washington is certified. That's right. What the underlying facts are, that's another proposition. Yes, Your Honor, but in Washington, it's a simple fact that as we stand here today, Mr. Taylor is certified as black in the state of Washington. By Washington. Yes. Not necessarily in Washington. Correct. But at the same time, the same people looking at the same evidence and under the same standards, Your Honor, have certified that Mr. Taylor is also not black. This case is about whether a single applicant, whether there's an issue of fact as to whether a single applicant was treated in an arbitrary and capricious manner or otherwise contrary to law. Now, do we get to look at the underlying evidence as to his race, or are we finished once we see that Washington has certified him? Well, Your Honor, I think that the file does contain sufficient information, but I do believe that under the statute, under CFR 26 CFR, once he presents an affidavit that says he's a minority, he has to be presumed a minority. And I would think that if they've already certified him as black, these same people, that should be conclusive. There shouldn't be a need to use a state rule to make determinations about a federal program, which is exactly what happened here, Your Honor. What are you relying on for the proposition that the mere submission of a, I can't remember what you called it, a certificate or an affidavit proclaiming one to be a minority, that you're thereby entitled to a presumption that you are, in fact, a minority? I thought the presumption was quite different. So what are you specifically relying on for that? That's explicitly stated in 49 CFR 26.67. Once he submits the affidavit. Which portion of that? I have it in front of me. Read me the language that you're focused on. Your Honor, I don't have it in front of me right now. It is contained in the statute. Okay. Well, what language? It basically indicates that by submitting an affidavit, a person is presumed to be a minority. It's in the briefing. It's in the statute. Well, let me just, are you talking about A1? Because I'll read it to you if you don't have it. I don't know why you don't have it in front of you, but if you want, I can read it to you. Yes, Your Honor. It says, subsection A is entitled presumption of disadvantage, right? Okay. And it goes on to say, you must rebuttably presume that citizens of the United States or lawfully admitted permanent residents who are women, black Americans, et cetera, et cetera, or other minorities found to be disadvantaged by the SBA are socially and economically disadvantaged individuals. That's the presumption. It's not that just because you say you're black, for example, that you are, in fact, African American. That's something that you still have to prove, and you bear the burden of doing that. But by submitting the affidavit that you are, and it is in the statute, and I apologize, Your Honors, by not having it in front of me. It is in the statute that by submitting the affidavit, a presumption arises that you are the minority that you claim to be. So merely by filing an application claiming that you are, the presumption is that you are? Well, it's more than an application. It's an affidavit sworn testimony. And combined with their certification of him, obviously Mr. Taylor had provided sufficient proof that he was black to be certified and then recertified by Washington State. And it's the same people looking at the same evidence under the same standard. I'm just still, I'd really like you to point me to the language you're relying on for this presumption, because I think that's where your entire argument goes off the rails, frankly. You assume that merely by submitting a piece of paper that says, I am black, that there is a presumption that arises that you are in fact a member of that minority group. And I don't see anything in this regulation that you cited, at least, that says that. Well, it's in the briefing. I'm talking about in the reg. In the reg. I mean, it is in the reg. But where? Your Honor, I don't have the entire reg in front of me, and I do apologize for that. Perhaps on reply you can come and show us in your brief where it is in the reg. I'd like to know where it is as well. I don't see it. Okay. I will attempt to have it for you, Your Honor. Counsel, is your principal claim under the APA? What's your principal claim here? Well, there is a claim under the APA. We also have discrimination and due process claims. And the APA, of course, basically says that a person should not be treated in an arbitrary and capricious manner. I'm trying to figure out how the summary judgment rules interact with the arbitrary and capricious standard in the APA. So is there something, can the court grant summary judgment on the APA, or did the court just simply grant judgment on the APA? Did they say this wasn't arbitrary and capricious to decide that he wasn't black? Or I'm trying to figure out how those two things interact. Right. Well, the court did grant summary judgment on the APA claim. And the APA, of course, at 5 U.S.C. 706, subsection 2, it requires the court to set aside an agency decision or findings that are, quote, arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with the law, end quote. And that includes the otherwise not in accordance with includes the discrimination and due process basis, excuse me, Your Honor, basis. And if you look at all of the things that happen here, there were issues of fact. This is a summary, well, it was decided on both summary judgment and Rule 12b-6 motion on the pleadings. And when you look at it, sir, there is certainly evidence that raises questions of fact for purposes of summary judgment as to whether Mr. Taylor was treated in an arbitrary and capricious manner. You've also got. What's your best evidence that Mr. Taylor is black? I've looked at the evidence. It's pretty thin. Well, again. DNA test? Well, the DNA test, no. DNA tests are an objective form of evidence. And, I mean, they're used for paternity in courts. Let me clarify. I'm just following up with Judge Bybee. You're talking now about the DNA and whether it's liable or not. His question is, what are you relying on? Are you relying on the DNA test, or is there something else you're also relying on? Is there something better than the DNA test? What's your best evidence that Mr. Taylor is black? Well, there's the affidavit, there's the DNA test, and there's the prior certification. Affidavit saying what? Attesting that he was black and Native American. And there's evidence in regard to, I mean, he's 6% Native American, which is 10 times more than the individual who had the company AOR International. Now, let's go on the DNA test. How much do we know about the reliability of DNA tests in this form or for this purpose? Now, DNA tests are pretty good, assuming there's no cheating or contamination, in saying that this piece of fluid matches the DNA, and we got you. That's pretty good. My understanding of DNA tests from Ancestry.com, 23andMe, and various others, including the one here, they are pretty imprecise. And they give ranges. They may come back and say you are 6% X, but in truth, what they really have is a range, and they've given you the middle of the range. I mean, what do we know about that in the record? I mean, I know a fair amount about reading, so I do have some background in this as a layperson, but just reading about it, what do we have in the record as to how reliable these DNA tests are as to percentage of ethnic ancestry? Well, I don't know if there's any evidence specifically in the record in regard to this particular DNA test. There's been arguments one way or another that it is or is not accurate and what it may be to some degree, but I don't think there's any hard factual evidence in regard to this specific test. But certainly the test is out there, and even if you consider that there's a range, Mr. Taylor's within the range of having this DNA, and the statute itself does not provide any specific minimum quantum. So what am I supposed to do with, for example, his birth certificate, where both parents are described in the birth certificate as Caucasian? Mr. Taylor's birth certificate now says he's black and Native American. Oh, it does not. He's sent something in to the state of California, but his birth certificate remains unchanged. Well, his birth certificate was changed. It was changed. It currently says black and Native American. But the birth certificate at his time of birth said Caucasian-Caucasian, and he then sent something in very recently saying, uh-oh, not true. But the birth certificate at his time of birth says Caucasian-Caucasian. And the state of California is now willing to certify that he's black? They have issued a birth certificate that says he's black and Native American. That's submitted, and it's in the record. And in regard to the Native American, like I was talking about here with the AOR, I mean, again, getting back to it, this is about whether there's a question of fact as to whether he was treated in an arbitrary and capricious manner. Has the state of California undertaken any independent investigation, or have they done it entirely upon his say-so? There's no evidence in the record in that regard, but it's a public record. It seems to me pretty clear that whatever the state of Washington did, the state of California did it on his say-so. They performed no independent investigation. Well, he requested it. I don't know what, if any, investigation they did. But it is in the record. He has a birth certificate that indicates he's black and Native American now. But, again, I'm getting back to the issue. The issue is whether he was treated in an arbitrary and capricious manner. For purposes of ‑‑oh, I think I've used up my ‑‑ You're into your four. Do you want to say the rest of them? Yes, I'm going to reserve the rest for rebuttal, Your Honor. And I will try to find the language that I was talking about. That would be helpful. Thank you. May it please the Court, Brian Kipnis, Assistant United States Attorney for the U.S. Department of Transportation, and Stephanie Jones. Before talking about the merits of this one ‑‑ I see there are two of you. Are you going to split time? Yes, I'm sorry, Your Honor. I think we're going to split at 50 percent. So I'll do seven and a half minutes. Okay, got it. Okay, thank you, Your Honor. As far as the birth certificate, from what I can tell what has happened is that the appellant has basically submitted an affidavit representing that his father is of a certain racial makeup, based on what we don't know. But what we seem to know is that the State of California simply receives those affidavits. So you are correct, Your Honor. The original birth certificate, the contemporaneous record of his birth, represents that his mother and father are Caucasian. And he has simply sought to amend, to put in a document that amends that. But from what I can tell, the State of California does nothing but receives it. The important thing, too, also, is that this occurred entirely after the district court's judgment in the matter. There's been no effort to supplement the record. And so this isn't even before the district court when it makes its ruling. So the record is the original birth certificate. This is all after the fact. The gravamen of this appeal is a claim under the Administrative Procedure Act. The Department of Transportation acted within its authority in not arbitrarily and capriciously in determining that there was not substantial evidence in the record to support the appellant's claim that he is of the groups, the minority groups that provide for a ---- I'm going to go back to a question that I asked Mr. Rosenberg, which is what is the interaction between the summary judgment standard and the arbitrary and capricious standard? The Ninth Circuit has been very clear about that, Your Honor. And I'll cite you to the Occidental Engineering case, 753 Fed 2nd at 769. Basically what that case holds is that because district courts are not finders of fact in the setting, they are simply making a determination based on the administrative record and are bound by the administrative record, which is the body of evidence in the case, and they're making essentially a determination of law, whether or not there's substantial evidence in the record, whether or not the decision is reasonable under the law, whether the agency considered the things it's supposed to consider, did not consider the things it's not supposed to consider, and made a reasonable decision on that. Mr. Rosenberg's argument says, well, it's not just whether it's arbitrary and capricious and an abuse of discretion, but it's otherwise whether it's contrary to law. And since there are other statutes that might be in play here, discrimination standards or discrimination statutes and the Equal Protection Clause, then because those things come into play, I get to say, well, the record is indeterminate, therefore it has to go to a jury under summary judgment. That's a strange overlay, and I can't say that I've seen it before. Well, he has made, from what I can tell, the appellant has made certain claims outside of the APA based on the Constitution. Those are still questions of law, so I'm not quite sure how you get to a jury on that. But the Equal Protection Clause argument, as far as I understand it... His argument is, I've put enough in the record that a jury could decide that I am black, and it ought to go to a jury to decide whether I'm black or not black. Well, the problem is, is that under the standard of review that he's invoked, it's the judge that makes that decision as a question of law based on the administrative record. The judge could decide, the judge has the authority under the APA to determine that the law is unconstitutional or that there's been unconstitutional activity by the government. That's within the court's jurisdiction. But the body of evidence is still the administrative record that's before the court. That's very clear in the APA. They can seek to supplement it, and they did seek to supplement it. However, the district court determined that they had not shown grounds under the four bases that this circuit allows for supplementing an administrative record. They're bound by the record, Your Honor. That's our position. So having considered the evidence, the Department of Transportation made a correct decision that there was not substantial evidence in the record to support the claim that the appellant belonged to the minority groups he claimed. The only evidence, as has been pointed out here, that he seems to be relying on are these DNA by ancestry tests. There's no evidence in the record as to the reliability of these. And I think what's occurred here is that the appellant is trying to equate these tests as equivalent to stating somebody's race. DNA by ancestry is very clear on its website that that's not the case. What it is measuring is an estimate of biographical ancestry, in other words, where someone's genealogical ancestry comes from, what parts of the world. But they are very clear in what percentages. And they cite them as estimates. But they're very clear that that's not a measure of race. So to say because I am 6% of my ancestry is estimated to come from sub-Saharan Africa means that I'm an African American simply is not based on anything in the record. And I would say ancestry by DNA, if they were here, would not stand by that either. That's very clear on their website. Same with his claim to be Native American. Ancestry by DNA says that the test is measuring indigenous Americans, which means, according to their website, North America, South America, Central America. But under the Department of Transportation standard, we're talking about Native Americans, not necessarily someone from South America or Central America, but someone who is recognized as a Native American in this country. So this attempt to equate an ancestry test to a measure of race simply doesn't hold up. It's not based in the record. Now, maybe it's some evidence, and it wasn't rejected by the state in considering Mr. Taylor's claim to have these group memberships. But there was no other evidence that he came forward when he was asked to legitimately that would sustain that claim. And, by the way, Your Honors, Mr. Rosenberg is not going to find any regulation that says that you get a presumption of being in a minority group just because you come forward with an affidavit. We're about to find out. Yes, you're about to find out. Let me ask you this. Mr. Rosenberg gave some emphasis to the certification by Washington State. Correct. What consequence does that have? I think it would be something that the Department of Transportation would consider, but it doesn't equate to a certification that the Department of Transportation recognizes that someone is part of a racial group. It's decided under a completely different evidentiary standard. I think my colleague from the state is going to talk about that a little bit more. But it's a less strict standard. That's not itself evidence, and I don't see anything that's preclusive upon the feds. Correct. The regulation is not set up that way at all. So I'm just about out of time, so I will let my colleague from the state. Okay. Good morning, Your Honors. Assistant Attorney General Mike Throgmorton here on behalf of the Washington State Office of Minority and Women's Business Enterprises. I want to begin with where you left off, Judge Fletcher, which is what preclusive effect, if any, does the state's determination have in the federal determination? The answer is none whatsoever. The state regulations make very clear that state certification doesn't count for anything else but state certification. The reason for that is because, unlike the state program, the federal program requires consideration of whether an applicant has held himself out as a member of a presumptively disadvantaged minority group and whether he is regarded as a member of that group by the relevant community. I think that skips over a couple of steps in your opponent's argument, and that's why we're anxiously awaiting to see what language he cites in that reg. Because what he says is that he's entitled to a presumption and more or less kind of an unrebuttable presumption that he's a member of a minority group once he submits a signed statement to that effect. The provision you're talking about is 49 CFR 2663, and that provision only kicks in under A1 if the reviewing official, it says, has a well-founded reason to question the individual's claim of membership. And then you go into have you held yourself out? Do other people regard you as a member of the minority group? He's saying that the agency erred by even getting to that point, so maybe you can address why he's wrong on that. Yes, Your Honor, and I have the regulations here before me. The regulation that we're relying on is 49 CFR section 2661, subsection E, which specifically says that in making determinations as to whether individuals have met their burden of demonstrating group membership, the state is required to consider all the facts in the record viewed as a whole. They're not limited to the declaration that is provided. Otherwise, as you accurately point out, somebody could meet their burden by simply declaring that they've met their burden. That's not the regulatory system that we have here. Indeed, even the presumptive, the regulation that defines the presumption, as you pointed out, 2667, sub A, contemplates more than just a bare-bones affidavit saying I am, for example, a member of a presumptively disadvantaged minority group. Well, the presumption that the reg setup has nothing to do with your membership in a racial group, that's, I think, the mistake your opponent is making. It gives you a presumption if you have shown yourself to be a member of a minority group that you are socially and economically disadvantaged. That's the presumption you get. That's correct. But I read the other reg, 63, as the one that matters here. But, sorry, I interjected. I'm sorry. I agree, and I would point out that subsection B of that exact same regulation says that in making that determination, that is the determination as to whether or not a person is a member of a presumptively disadvantaged minority group, that the state must consider whether the person has held themselves out. I have four minutes left on the clock here, but I want to make sure I answer any questions the panel has. Otherwise, I'm happy to yield the remainder of my time. We appreciate the gift. Thank you, Your Honors. Thank you. Mr. Rosenberg. Thank you, Your Honors, and I do apologize. I do not have an additional cite. I would request the court to look at the briefing because it is in the briefing. Look at what was the one you cited, 2667? Yeah, 26.67. Okay, so where in that reg, or are you saying you looked at it and actually you're wrong on that point? No, I am not saying that I am wrong on that point. So where in that reg, now that you've had a chance to look at it, does it say that you get a presumption upon submitting this notarized affidavit that you're a member of a minority group? And as I'm saying, Your Honor, it is in the briefing. I don't have the citation at the moment. Do you have the reg in front of you? I do not have the reg in front of me. You weren't able to look at it during your? Well, I looked at that specific reg. You need more time to check it out, and then you'll let us know where in the reg that it's about a page long. Is the court inviting me to submit that? That's not up to me. Well, let me ask you this. You're relying on that particular regulation, or are you relying on some other regulation? There's a number you cannot now remember. That is one of the regulations we are relying on. As I recall, it was in conjunction with other regulations. You don't have a copy of the briefs with you? You know, I've argued quite a number of times before this court, and in my experience, if you're sitting there looking at different pages in the brief, you really don't have time to argue at anything I try to be prepared with. So, no, I do not have it at the moment. Or the regulations you're relying on. I did not know it would be an issue today before the court, and I apologize. Well, listen, unless we send out an order with a request to you to identify anything more or add to the briefing, you don't need to respond. So unless we send out an order, status quo stands. I understand, Your Honor. But I'm going to get back here, and I haven't gotten a chance to make most of my arguments. I appreciate the court's questions and the opportunity to answer them. But it does come down here to a summary judgment standard and a 12B6 standard. And under 463 U.S. 43, the Supreme Court, the United States Supreme Court, says that an agency's decision is arbitrary and capricious if it relies on factors Congress didn't intend, fails to consider an important aspect of the problem, or offers an explanation for its decision contrary to the evidence. And I believe all of those are true here. It was contrary not to certify them as black when they had already certified them as black. Wait a minute. You just mixed up the theys. I mean, the state had certified them as black, and now we're talking about the feds. Well, the state acted as an agency for the feds. It was the same people looking at the same evidence, using the same standards. Well, they decided once for Washington, and then looking at the same evidence on a different day, decided for DOT that it did not qualify. Right. Yeah, there's a bit of a contradiction here. But, you know, the thing that maybe is most inexplicable is not why they didn't follow the first decision, why they didn't follow their decision when they made it for DOT. It's why they made the decision for Washington in the first place. Well, that's done, and they've never questioned that. And, in fact, they recertify them while saying they had. But why is that binding on their subsequent decision? Well, it indicates that they're not looking at the evidence before them, because the evidence before them is that they. . . Which time? I'm sorry. Perhaps they did look at the evidence the first time. The case was going on for a number of years before they made that decision. He was under review for quite a long time. Anyway, Your Honors, it looks like my time is running out. I thank you very much. And I would request that you do look at the briefing, because I do believe that the citation relied on is in there. And that the proposition that I've set forward is the correct one. Okay, thank you. Thank you, Your Honors. We have a look at the briefing, and we will look at the briefing again. Yes, Your Honors. Thank you very much. Thank you for your arguments. Orion Insurance Group v. Washington Office of Minority and Women's Business Enterprise is submitted for decision.
judges: W. Fletcher, Bybee, Watford